```
              IN THE UNITED STATES DISTRICT COURT

              IN AND FOR THE DISTRICT OF DELAWARE

                           - - -

SHIRE ORPHAN THERAPIES LLC and  )    Civil Action
SANOFI-AVENTIS DEUTSCHLAND      )
GMBH,                           )
                                )
         Plaintiffs,            )
                                )
    v.                          )
                                )
FRESENIUS KABI USA, LLC,        )
                                )
         Defendant.             )    No. 15-1102-GMS

                           - - -
                    Wilmington, Delaware
                 Friday, December 15, 2017
                        10:00 a.m.
                    Telephone Conference
                           - - -

BEFORE:  HONORABLE GREGORY M. SLEET, Senior Judge, U.S.D.C.,
                                     District of Delaware

APPEARANCES:

         DEREK J. FAHNESTOCK, ESQ.
         Morris, Nichols, Arsht & Tunnell LLP
              -and-
         EDGAR J. HAUG, ESQ.,
         SANDRA KUZMICH, Ph.D., ESQ.,
         LAURA A. CHUBB, ESQ., and
         ELIZABETH MURPHY, ESQ.
         Haug Partners LLP
         (New York, NY)
                        Counsel for Plaintiffs

         KAREN E. KELLER, ESQ.
         Shaw Keller LLP
              -and-
         WILLIAM G. JAMES, ESQ., and
         JOHN COY STULL, ESQ.
         Goodwin Procter LLP
         (Washington, DC)
                        Counsel for Defendant
```

| | | |
|---|---|---|
| 10:01:59 | 1 | THE COURT: Good morning, counsel. Who is on |
| 10:02:01 | 2 | the line for the plaintiffs, please. |
| 10:02:04 | 3 | MR. FAHNESTOCK: Good morning, Your Honor. This |
| 10:02:06 | 4 | is Derek Fahnestock from Morris Nichols for plaintiffs. |
| 10:02:09 | 5 | With me on the line from Haug Partners are Ed Haug, Sandra |
| 10:02:15 | 6 | Kuzmich, Laura Chubb, and Elizabeth Murphy. |
| 10:02:19 | 7 | THE COURT: Good morning, everyone. |
| 10:02:21 | 8 | Who is going to discuss the defendant's motion |
| 10:02:25 | 9 | with me for the plaintiffs? |
| 10:02:30 | 10 | MS. KELLER: Good morning, Your Honor. Karen |
| 10:02:31 | 11 | Keller -- |
| 10:02:36 | 12 | THE COURT: For the plaintiffs, who is going to |
| | 13 | be arguing? |
| 10:02:40 | 14 | MR. FAHNESTOCK: That would be Ed Haug, Your |
| 10:02:43 | 15 | Honor. |
| 10:02:43 | 16 | THE COURT: Thanks. Let's hear intros for the |
| 10:02:47 | 17 | defendant, please. |
| 10:02:48 | 18 | MS. KELLER: Good morning, Your Honor. Karen |
| 10:02:50 | 19 | Keller from Shaw Keller on behalf of Fresenius Kabi. With |
| 10:02:54 | 20 | me today is Bill James and John Coy Stull from Goodwin |
| 10:02:57 | 21 | Procter. |
| 10:02:57 | 22 | THE COURT: Good morning. |
| 10:03:04 | 23 | Who is going to argue the motion for you, |
| 10:03:09 | 24 | counsel? |
| 10:03:11 | 25 | MR. JAMES: That would be Bill James, Your |

|         |    |                                                                      |
|---------|----|----------------------------------------------------------------------|
| 10:03:14 | 1  | Honor. |
| 10:03:14 | 2  | THE COURT:  Okay. |
| 10:03:19 | 3  | Have I accounted for everyone in the case? |
| 10:03:23 | 4  | Okay. |
| 10:03:27 | 5  | Let's go, Mr. James. |
| 10:03:30 | 6  | MR. JAMES:  Thank you, Your Honor.  We |
| 10:03:32 | 7  | appreciate you hearing us on this issue. |
| 10:03:35 | 8  | Your Honor, we submitted this motion to amend in |
| 10:03:39 | 9  | March of this year, and a lot has happened in the case since |
| 10:03:43 | 10 | then. |
| 10:03:45 | 11 | Just as a preliminary matter, Your Honor should |
| 10:03:49 | 12 | know that the experts on both sides have addressed this |
| 10:03:54 | 13 | issue.  Expert depositions have occurred on this issue.  The |
| 10:04:00 | 14 | parties have written this issue up in their submissions in |
| 10:04:05 | 15 | the pretrial order, which is due on Monday.  From our point |
| 10:04:10 | 16 | of view, Your Honor, this issue is trial-ready, and it will |
| 10:04:15 | 17 | not affect the timing of the trial or the schedule in any |
| 10:04:20 | 18 | regard. |
| 10:04:20 | 19 | THE COURT:  Let's stop right there, because |
| 10:04:23 | 20 | those are important developments.  We may have a rather |
| 10:04:29 | 21 | brief conversation this morning. |
| 10:04:31 | 22 | Mr. Haug, would you comment about what you have |
| 10:04:35 | 23 | just heard, please, how you think it should impact the |
| 10:04:39 | 24 | Court's ruling. |
| 10:04:40 | 25 | MR. HAUG:  Yes, Your Honor, be glad to. |

| | | |
|---|---|---|
| 10:04:44 | 1 | I don't entirely agree with what Mr. James just |
| 10:04:47 | 2 | said. The motion to amend was, as Your Honor knows from the |
| 10:04:52 | 3 | papers, filed seven months after the deadline, and it was |
| 10:04:56 | 4 | about a month or so before the end of fact discovery. And |
| 10:05:00 | 5 | long -- |
| 10:05:01 | 6 | THE COURT: Mr. Haug, I know you have got your |
| 10:05:04 | 7 | talking points this morning. You are going to have to |
| 10:05:07 | 8 | answer my question. That was to address directly the |
| 10:05:10 | 9 | developments that Mr. James has just reported to the Court |
| 10:05:12 | 10 | and how you think they might impact. I have read your |
| 10:05:15 | 11 | papers, so I know what you want to argue. Please give me |
| 10:05:18 | 12 | that much. Answer my question. All right? |
| 10:05:22 | 13 | MR. HAUG: I am sorry, Your Honor. |
| 10:05:24 | 14 | We did take fact discovery to the extent we |
| 10:05:28 | 15 | could on this issue. There were two, I think, two people |
| 10:05:31 | 16 | that were deposed on it. And there were also expert reports |
| 10:05:34 | 17 | that addressed the issue. So Mr. James is correct on that. |
| 10:05:39 | 18 | It is addressed in the pretrial order to that extent. |
| 10:05:42 | 19 | THE COURT: Do you disagree when he says the |
| 10:05:45 | 20 | case is trial-ready? |
| 10:05:47 | 21 | MR. HAUG: Well, I don't know if this issue is |
| 10:05:52 | 22 | in the case. If this issue comes into the case with Your |
| 10:05:55 | 23 | Honor's ruling now, then I think the case is not |
| 10:05:59 | 24 | trial-ready. I think there would be additional discovery |
| 10:06:01 | 25 | that we would want to take to avoid prejudice. |

| | | |
|---|---|---|
| 10:06:04 | 1 | **THE COURT:** Tell me what additional discovery. |
| 10:06:07 | 2 | I know you have made assertions of prejudice. I rather |
| 10:06:11 | 3 | agree with the defendants in the reply brief that the |
| 10:06:14 | 4 | assertions are rather vague and quite frankly not well taken |
| 10:06:18 | 5 | by me. I want you to tell me how you would be prejudiced if |
| 10:06:24 | 6 | I grant this motion today and order this case to trial at |
| 10:06:28 | 7 | the appointed time. |
| 10:06:29 | 8 | **MR. HAUG:** The prejudice, Your Honor, I think |
| 10:06:32 | 9 | would be, we did not have the opportunity to go to Germany, |
| 10:06:40 | 10 | which is where all the documents are, going back 20, 25 |
| 10:06:43 | 11 | years, to search for documents on a patent that is not the |
| 10:06:46 | 12 | patent in suit, and to talk to people, to the extent they |
| 10:06:49 | 13 | are still available, namely, inventors and other people. We |
| 10:06:53 | 14 | didn't have the opportunity to do that because of where we |
| 10:06:55 | 15 | were in the schedule in the case. |
| 10:06:56 | 16 | **THE COURT:** Mr. James, there is your target. |
| 10:07:00 | 17 | Let me hear from you. |
| 10:07:03 | 18 | **MR. JAMES:** Thank you, Your Honor. |
| 10:07:05 | 19 | Your Honor, a couple of things. One is that all |
| 10:07:08 | 20 | of the discovery that would -- first of all, I don't think |
| 10:07:12 | 21 | discovery is really relevant to this issue, because this is |
| 10:07:15 | 22 | an obviousness-type double patenting issue. The issue is |
| 10:07:18 | 23 | really just comparing the claim of the referenced patent |
| 10:07:23 | 24 | that we have found and asserted to the claim of the, the |
| 10:07:27 | 25 | asserted claim of the '333 patent and deciding whether that |

```
10:07:30   1    is an obvious variant or not.
10:07:34   2              Discovery of what happened inside of Hoechst 30
10:07:37   3    years ago isn't relevant to that issue as an initial matter.
10:07:43   4              Second is that we took discovery, we asked for
10:07:46   5    discovery of Hoechst in this case on Bradykinin antagonists.
10:07:52   6    We actually, as we set out in our papers, we propounded a
10:07:58   7    document request that specifically called for patents owned
10:08:02   8    by the plaintiffs that relate to Bradykinin antagonists.
10:08:07   9    The plaintiffs told us they were going to produce the
10:08:09   10   patents --
10:08:09   11             THE COURT:  When did you make that request?
10:08:13   12             MR. JAMES:  We made that request in 2016, well
10:08:16   13   in advance of the date in Your Honor's scheduling order to
10:08:19   14   amend the pleadings.  If we had gotten that discovery, we
10:08:22   15   wouldn't be here today.
10:08:26   16             We did take discovery of the European inventors,
10:08:32   17   to the extent that they were provided to us.  We got
10:08:35   18   documents produced to us from Hoechst in Germany.  I think
10:08:40   19   they had every opportunity to search for these documents.
10:08:42   20   They are actually called for by our discovery requests.
10:08:48   21             I don't think there is any additional discovery
10:08:49   22   that would be necessary here.
10:08:51   23             As we said in our papers, we weren't seeking
10:08:54   24   additional discovery from them.  We never did.  We think we
10:08:59   25   have everything we need to go at trial.
```

| | | |
|---|---|---|
| 10:09:01 | 1 | THE COURT: Mr. Haug. |
| 10:09:02 | 2 | MR. HAUG: There were never any specific |
| 10:09:05 | 3 | discovery requests for the '803 patent, which is what we are |
| 10:09:08 | 4 | talking about here. No one knew that was an issue in the |
| 10:09:12 | 5 | case. We certainly didn't. It wasn't raised by the |
| 10:09:14 | 6 | defendants at any point until well after the cutoff to amend |
| 10:09:19 | 7 | the pleadings and add this other new defense. It's not like |
| 10:09:24 | 8 | we were asked for an actual document or patent and didn't |
| 10:09:27 | 9 | give it to them. That is not the case at all. |
| 10:09:29 | 10 | In addition, this is a public document. This is |
| 10:09:31 | 11 | an issued patent that they have had available to them for |
| 10:09:34 | 12 | many, many years, probably. I don't think there is -- there |
| 10:09:37 | 13 | was nothing we could have produced earlier based on what was |
| 10:09:40 | 14 | going on in the case. We simply didn't know about this new |
| 10:09:44 | 15 | defense until seven months after the cutoff for amending the |
| 10:09:47 | 16 | pleadings. And they have shown, we believe, no good cause |
| 10:09:50 | 17 | for the delay. |
| 10:09:51 | 18 | We did the best we could, Your Honor, to take |
| 10:09:55 | 19 | the fact discovery and expert discovery at the very end of |
| 10:09:58 | 20 | the discovery period because we had not had a ruling on this |
| 10:10:01 | 21 | motion, so we did the best we could to address it. |
| 10:10:04 | 22 | But in answer to your question about prejudice, |
| 10:10:09 | 23 | were we able to do everything we would have done, had the |
| 10:10:13 | 24 | defense been properly added to the case, according to the |
| 10:10:16 | 25 | scheduling order in the case, no, we didn't have the |

```
10:10:19   1   opportunity to do that in my judgment.
10:10:20   2              THE COURT:  It's been my experience, with all
10:10:23   3   due respect, Mr. Haug, everything that could be done doesn't
10:10:26   4   necessarily need to be done, particularly in patent cases.
           5              MR. HAUG:  I agree, Your Honor.
10:10:31   6              Mr. James, your last word on this.
10:10:37   7              MR. JAMES:  Your Honor, the point that Mr. Haug
10:10:40   8   is making that nobody knew about this patent is exactly the
10:10:44   9   reason that we didn't find it initially, because it's not
10:10:49  10   prior art.  It's a later-filed patent application that
10:10:52  11   expires earlier.  It isn't referenced on the face of the
10:10:57  12   patent in suit, so you couldn't find it, it's not referenced
10:11:02  13   in the patent family, which most obviousness type
10:11:04  14   double-patenting references are.
10:11:07  15              In fact, it was never even disclosed to the
10:11:10  16   Patent Office, which it should have been, as we pointed out
10:11:14  17   in our reply brief on Page 2.  This patent was essentially
10:11:19  18   hidden and unknown to anyone until we sort of discovered it
10:11:24  19   by happenstance just before we brought it to Your Honor's
10:11:28  20   attention last March.
10:11:29  21              THE COURT:  Okay.  My ruling is essentially, Mr.
10:11:36  22   Haug, get ready for trial.  I am going to permit the
10:11:40  23   amendment.  I believe that the defendant has been diligent
10:11:45  24   in its efforts under the circumstances, given the unusual
10:11:50  25   nature of the '803.
```

```
10:11:54   1            And also, I am not quite sure why plaintiff
10:11:57   2   didn't produce the '803 when asked to.  I am not inviting a
10:12:04   3   comment.  That's based on my reading of the papers.  I
10:12:09   4   think, to the extent that you feel that you have been
10:12:14   5   aggrieved by the Court's ruling, you will have recourse
10:12:17   6   posttrial, if not even pretrial, if you desire to take that
10:12:22   7   route.
10:12:22   8            Anything else, counsel?
10:12:26   9            MR. JAMES:  Nothing from me, Your Honor.
10:12:28  10            MR. HAUG:  No, Your Honor.  Thank you.
          11            (Matter concluded at 10:13 a.m.)
          12                           -  -  -
          13   Reporter:  Kevin Maurer
```