```
                                                 1
   1              IN THE UNITED STATES DISTRICT COURT

   2              IN AND FOR THE DISTRICT OF DELAWARE

   3                          - - -

   4   SHIRE ORPHAN THERAPIES LLC and ) Civil Action
       SANOFI-AVENTIS DEUTSCHLAND     )
   5   GMBH,                          )
                                      )
   6              Plaintiffs,         )
                                      )
   7       v.                         )
                                      )
   8   FRESENIUS KABI USA, LLC,       )
                                      )
   9              Defendant.          ) No. 15-1102-GMS

  10                          - - -

  11                    Wilmington, Delaware
                      Tuesday, January 23, 2018
  12                         10:00 a.m.
                        Telephone Conference
  13
                              - - -
  14
       BEFORE:  HONORABLE GREGORY M. SLEET, Senior Judge, U.S.D.C.,
  15                               District of Delaware

  16   APPEARANCES:

  17         JACK B. BLUMENFELD, ESQ., and
             DAREN J. FAHNESTOCK, ESQ.
  18         Morris, Nichols, Arsht & Tunnell LLP
                  -and-
  19         EDGAR J. HAUG, ESQ.,
             SANDRA KUZMICH, Ph.D., ESQ.,
  20         LAURA A. CHUBB, ESQ., and
             ELIZABETH MURPHY, ESQ.
  21         Haug Partners LLP
             (New York, NY)
  22
                                Counsel for Plaintiffs
  23

  24

  25
```

```
                                                 2
   1   APPEARANCES CONTINUED:

   2         KAREN E. KELLER, ESQ.
             Shaw Keller LLP
   3              -and-
             DARYL L. WIESEN, ESQ.
   4         WILLIAM G. JAMES, ESQ.,
             JOHN COY STULL, ESQ., and
   5         SAMUEL SHERRY, ESQ.
             Goodwin Procter LLP
   6         (Washington, DC)

   7                          Counsel for Defendant

   8                           - - -

10:02:30   9          THE COURT:  Good morning, counsel.  Who is on
10:02:32  10   the line for the plaintiffs this morning?
10:02:34  11          MR. BLUMENFELD:  Good morning, Your Honor.  It's
10:02:36  12   Jack Blumenfeld and Derek Fahnestock from Morris Nichols,
10:02:40  13   along with Ed Haug, Sandy Kuzmich, Liz Murphy, and Laura
10:02:46  14   Chubb from Haug Partners in New York.
10:02:48  15          THE COURT:  Good morning.
10:02:50  16          For the defendant.
10:02:53  17          MS. KELLER:  Good morning, Your Honor.  Karen
10:02:55  18   Keller from Shaw Keller.  With us today is Bill James, Daryl
10:03:00  19   Wiesen, Koy Stull, and Sam Sherry from Goodwin Procter.
10:03:04  20          THE COURT:  So if counsel, for the record, if
10:03:10  21   you would just let us all know who is speaking, since there
10:03:13  22   are multiple lawyers on the line for each party, that would
10:03:16  23   be helpful.
10:03:18  24          I don't think we have a ton to talk about today.
10:03:20  25   The first thing I need to mention is the
```

```
                                                 3
10:03:25   1   schedule.
10:03:27   2          This semester, I teach a course in patent
10:03:32   3   litigation at Duke, which I have taught basically every
10:03:35   4   other semester for a bit of time now.
10:03:38   5          We will work on -- I teach the course Thursday
10:03:41   6   evening -- we will work on Thursday morning from 9 to 11,
10:03:47   7   when I need to leave, get myself to the airport, and resume
10:03:53   8   the next day at 10:30, is my plan.  My plane gets me there
10:04:02   9   in time to possibly get on the Bench by 10, but certainly by
10:04:05  10   10:30 barring any travel mishaps.
10:04:10  11          Let me find out, since you guys gave me some new
10:04:16  12   news this morning, I thought I would give you some, let's
10:04:20  13   find out how that will impact your planning and thinking.  I
10:04:24  14   know you are just processing this.  I know we set aside five
10:04:28  15   days.  It seemed like a lot to me for a one-patent case.
10:04:32  16          Let's begin with plaintiff.
10:04:35  17          MR. BLUMENFELD:  Your Honor, I don't think that
10:04:39  18   should be a problem.  It sounds like we will have four days
10:04:44  19   plus a little more.  We were hopeful of finishing the trial,
10:04:51  20   as Your Honor suggested, in a little less than five full
10:04:55  21   days anyway.  We should be able to work around that and
10:04:59  22   still finish on Friday.
10:05:03  23          THE COURT:  From defendant's point of view?
10:05:13  24          MR. JAMES:  Your Honor, we agree with what Mr.
10:05:17  25   Blumenfeld just said, that we think there should be adequate
```

```
                                                 4
10:05:20   1   time in that schedule to finish the trial next week.
10:05:23   2          THE COURT:  Great.  Okay.  Let's go to Exhibit
10:05:29   3   14.  I got your letter.
10:05:32   4          MR. BLUMENFELD:  Your Honor, just to fill you in
10:05:38   5   on Exhibit 14 and Exhibit 15, I think as a result of
10:05:45   6   conversations that the parties have had over the last few
10:05:51   7   days, we have resolved all of the issues in the cover order
10:05:56   8   and we have resolved most of the issues in Exhibit 14 and
10:06:01   9   15.
10:06:01  10          The only three evidentiary issues that I think
10:06:04  11   are left are the issue we raised about Dr. Raines, the issue
10:06:11  12   that the defendant raised about our expert, Ms. Ellis, and
10:06:18  13   an issue that the defendant raised in a letter to Your Honor
10:06:23  14   last night.
10:06:27  15          We are also to happy to just take them up at
10:06:30  16   trial since they are all kind of witness issues, whichever
10:06:34  17   Your Honor would prefer.
10:06:36  18          THE COURT:  How does the other side feel?
10:06:41  19          MR. JAMES:  Your Honor, I will jump in.  I think
10:06:48  20   Mr. Wiesen will handle the issue about from Dr. Raines and
10:06:51  21   Ms. Ellis.
10:06:52  22          If I could talk about the other issue we sent
10:06:57  23   Your Honor last night by letter, so we were trying to give
10:07:00  24   you the opportunity to look at the issue before the call.
10:07:07  25   It relates to the schedule.  As you know, yesterday, you
```

5

```
10:07:11   1   entered an order in which we dropped our Section 103
10:07:18   2   obviousness case.  The only two defenses remaining are
10:07:22   3   obvious type double patenting and laches.  In that regard,
10:07:26   4   the plaintiffs have submitted expert reports from Dr. Bell,
10:07:32   5   who is an economist, and Dr. Kaplan, who is a clinician,
10:07:37   6   related to secondary considerations.
10:07:41   7            Dr. Bell talks about obviousness in his expert
10:07:44   8   report, sort of lies the predicate, legal and economic
10:07:50   9   framework for why we care about commercial success.  He
10:07:54  10   doesn't say anything about obviousness double type
10:07:59  11   patenting.  He doesn't reference the ODP, the obvious type
10:08:06  12   double-patenting reference patents we are relying on.
10:08:10  13            THE COURT:  This is which witness?
10:08:13  14            MR. JAMES:  Dr. Bell.  The economist.
10:08:21  15            Dr. Kaplan also, he doesn't talk about
10:08:25  16   obviousness type double patenting or obviousness, for that
10:08:29  17   matter.  He doesn't talk about the reference patent, the
10:08:33  18   7803 patent we are calling it in this case.
10:08:38  19            Your Honor, we didn't have notice under Rule 26
10:08:40  20   about these opinions relating to the obviousness type double
10:08:45  21   patenting argument.  We couldn't have our experts respond to
10:08:50  22   whatever assertions they might make about why these things
10:08:54  23   are relevant.  We couldn't take their depositions because
10:08:57  24   they weren't in their expert reports.
10:08:59  25            We don't think they should be testifying at
```

6

```
10:09:02   1   trial on the obviousness type double patenting defense.  By
10:09:08   2   the same token, if they do not put in evidence on commercial
10:09:13   3   success through Dr. Bell, their economist, and Dr. Kaplan,
10:09:16   4   their clinician, we wouldn't put in our counterpart, Dr.
10:09:19   5   Hofmann, our economist and Dr. Pines, a clinician.
10:09:23   6            THE COURT:  So it's a notice issue.
10:09:27   7            MR. JAMES:  It is.
10:09:29   8            THE COURT:  Could I hear a response, please.
10:09:32   9            MR. BLUMENFELD:  Your Honor, it is really not a
10:09:34  10   notice issue.  They had full notice of everything that Dr.
10:09:38  11   Bell and Dr. Kaplan were going to talk about.  Dr. Bell is
10:09:42  12   an economist.  Dr. Kaplan is a physician, a doctor.
10:09:47  13            When their reports were done, they didn't talk
10:09:50  14   about obviousness or about obviousness type double
10:09:54  15   patenting.  They talked about the commercial success in Dr.
10:10:01  16   Bell's case, about the long-felt need for the drug in Dr.
10:10:05  17   Kaplan's case.
10:10:07  18            At that time, obviousness was in the case,
10:10:12  19   obviousness type double patenting wasn't even in the case at
10:10:16  20   that time.  In its findings and conclusions, which are Tab
10:10:19  21   13 of the pretrial order, Fresenius incorporates its
10:10:24  22   obviousness section by reference in obviousness type double
10:10:30  23   patenting.  They say that Claim 14, which is the only claim
10:10:34  24   at issue anymore, is an obvious variant based on the prior
10:10:39  25   art.
```

7

```
10:10:40   1            We relied on secondary considerations, long-felt
10:10:43   2   need and commercial success.  This is a little bit of a --
10:10:47   3   it feels like a little bit of a trick here.
10:10:51   4            Yesterday Fresenius dropped obviousness, then
10:10:54   5   last night they say, okay, now you can't put in your
10:10:57   6   secondary considerations.  Although secondary considerations
10:11:03   7   went to both obviousness and obviousness type double
10:11:07   8   patenting, and they don't change and the discovery doesn't
10:11:09   9   change, the reports don't change, the depositions don't
10:11:12  10   change, depending on whether it goes to obviousness or
10:11:16  11   obviousness type double patenting.
10:11:18  12            On the legal point, it's clear that secondary
10:11:20  13   considerations, like commercial success and long-felt need,
10:11:26  14   are relevant and are as relevant to obviousness type double
10:11:31  15   patenting as to obviousness.  Your Honor had this issue in
10:11:33  16   the Eli Lilly v. Teva case back in 2011 or 2012 where you
10:11:40  17   excluded evidence of secondary considerations going to
10:11:45  18   obviousness type double patenting because of a footnote in a
10:11:50  19   Federal Circuit case, the Geneva, said that was erroneous,
10:11:58  20   they affirmed your opinion but said your secondary
10:12:03  21   consideration evidence was erroneous.
10:12:05  22            More recently, in UCB v. Accord in 2016, Judge
10:12:11  23   Stark said, and I will quote his opinion, 201 F.Supp. 3rd.
10:12:16  24   491 at 536, "Generally, when considering whether a patent is
10:12:21  25   invalid for obviousness type double patenting, the Court is
```

8

```
10:12:24   1   required to considered objective indicators of
10:12:28   2   nonobviousness of such evidence if presented."
10:12:33   3            We have presented it.  It doesn't change because
10:12:37   4   they dropped obviousness and are only asserting obviousness
10:12:41   5   type double patenting.
10:12:42   6            It is the same evidence we presented in our
10:12:45   7   report and the depositions.  Nothing about it changes.
10:12:49   8            THE COURT:  I will hear a brief response.
10:12:53   9            MR. JAMES:  Your Honor, Mr. Blumenfeld is right
10:12:56  10   that the Federal Circuit said that secondary considerations
10:13:00  11   can be relevant in obviousness type double patenting
10:13:04  12   contexts.  But you have to demonstrate how they are
10:13:11  13   relevant.  So here we are not arguing obviousness over the
10:13:15  14   prior art per se.
10:13:16  15            There is a patent that is owned by Hoechst that
10:13:21  16   claims an intermediate to the compound that is claimed in
10:13:24  17   this litigation, and there is no effort made by the
10:13:31  18   economist or the clinician, doctor/clinician, to demonstrate
10:13:36  19   how either one of their factors would be relevant in that
10:13:40  20   context.
10:13:41  21            So, yes, it can be relevant, but it has to be
10:13:45  22   demonstrated how it's relevant in the particular
10:13:47  23   circumstances.  None of that is in the expert report.
10:13:52  24   Again, it is not even mentioned.  We didn't have the
10:13:55  25   opportunity to vet that in discovery.
```

9

10:13:58  1      We are not saying that it's per se out in an ODP
10:14:03  2  context, that is not right.  We understand secondary
10:14:07  3  considerations can be relevant.  But we weren't on notice as
10:14:10  4  to how they were going to try to prove that up.
10:14:12  5      THE COURT:  Okay.
10:14:13  6      Mr. Blumenfeld.
10:14:14  7      MR. BLUMENFELD:  Your Honor, I really don't
10:14:17  8  understand that point, because the issue here is whether
10:14:23  9  there are secondary considerations that apply to Claim 14.
10:14:28 10  Their claim is that Claim 14 is an obvious variant based on
10:14:36 11  a certain reference and based on other prior art which they
10:14:40 12  were till yesterday also relying on for obviousness.
10:14:43 13      It doesn't change the analysis to say the
10:14:47 14  invention of Claim 14 was a commercial success, the
10:14:51 15  invention of Claim 14 satisfied a long-felt need, to say
10:14:56 16  that somehow that is different if it is a double patenting
10:14:59 17  obviousness analysis or a straight obviousness analysis.
10:15:05 18      A couple weeks ago, when Your Honor permitted
10:15:08 19  double patenting to come into the case, Fresenius told you
10:15:12 20  that all of the discovery that was needed was done.  So now
10:15:17 21  to hear that somehow something wasn't done is a little
10:15:22 22  surprising to us.
10:15:24 23      Nothing changes.  The only thing I heard was
10:15:27 24  that they didn't tell us that these same facts that they are
10:15:31 25  relying on for commercial success and for long-felt need now

10

10:15:35  1  apply to whether Claim 14 is an obvious variant as opposed
10:15:40  2  to whether Claim 14 was obvious under a straight 103
10:15:45  3  analysis.  There is nothing different about it.
10:15:48  4      THE COURT:  Last word, counsel.
10:15:51  5      MR. JAMES:  Your Honor, if I could.
10:15:54  6      It makes all the difference in the world whether
10:15:56  7  we are talking about obviousness over the prior art which
10:16:00  8  arose prior to 1989 or over this intermediate claimed in a
10:16:06  9  patent owned by the plaintiffs that arose in 1997 and how
10:16:12 10  there is any relevance of the commercial success of the
10:16:17 11  product ultimately over that compound.
10:16:20 12      The relevance of these two, the long-felt need
10:16:24 13  and the commercial success, makes all the relevance in the
10:16:28 14  world which defense we are talking about.
10:16:31 15      On the discovery point, I did tell you that
10:16:34 16  discovery had been completed.  And that was because their
10:16:38 17  other experts addressed the obviousness type double
10:16:41 18  patenting argument and we took their depositions on it.
10:16:44 19  That just didn't occur with respect to these two experts.
10:16:48 20  We had no notice that these opinions were relevant to the
10:16:51 21  ODP argument.
10:16:54 22      THE COURT:  Is that a reasonable statement for
10:16:59 23  your colleague to make, Mr. Blumenfeld, under the
10:17:01 24  circumstances?
10:17:03 25      MR. BLUMENFELD:  I am sorry, I don't think that

11

10:17:06  1  was a reasonable statement at all.  The question in either
10:17:11  2  case, whether it is obviousness or obviousness type double
10:17:15  3  patenting, was whether the invention was obvious at the time
10:17:19  4  of the invention.  The questions about secondary
10:17:25  5  considerations go to exactly the same thing, whether for 103
10:17:29  6  or for double patenting it was obvious at the time of the
10:17:34  7  invention.  The commercial success and long-felt need are
10:17:38  8  the same, exactly the same in either case.
10:17:40  9      THE COURT:  Counsel for defense, Mr. James, I
10:17:51 10  can't see how it would be prudent for the trial judge, for
10:17:55 11  me, at this juncture, to exclude this evidence, given what I
10:18:03 12  have just heard.  Why wouldn't it make more sense to go
10:18:07 13  ahead and listen to the evidence and give counsel a chance
10:18:10 14  to renew your discussion either during the trial, perhaps at
10:18:16 15  two different times, after the witnesses have testified
10:18:20 16  and/or posttrial?  Why risk having to do this again by
10:18:28 17  having me perhaps prematurely preclude the witnesses?  The
10:18:36 18  record will be more fulsomely developed and I will have a
10:18:40 19  more clear picture than I frankly do today, given the
10:18:45 20  limited opportunity I have had to understand the issue and
10:18:48 21  its relatively late presentation to the Court.
10:18:52 22      Can you tell me why it would be prudent for me
10:18:55 23  to act now rather than later?
10:18:58 24      MR. JAMES:  Your Honor, I understand your
10:19:00 25  concern.  Certainly, we will renew whatever objections we

12

10:19:07  1  have during their testimony and after, in the posttrial
10:19:10  2  briefs, if that is Your Honor's ruling.  But I don't think
10:19:13  3  you have heard today anything from counsel for the
10:19:16  4  plaintiffs about how obvious type double patenting was
10:19:23  5  referenced in these expert reports.
10:19:25  6      THE COURT:  I understand your point, Mr. James.
10:19:29  7  Do you want to respond to that, Mr. Blumenfeld?  You didn't
10:19:31  8  use the magic words, I guess, is sort of what I am hearing.
10:19:35  9      MR. BLUMENFELD:  Yes, Your Honor.  Those reports
10:19:38 10  didn't use the terms obviousness type double patenting.
10:19:43 11  They used the term obviousness.  At that time obviousness
10:19:47 12  was the defense that was pleaded.  But they don't analyze
10:19:53 13  the prior art.  They don't discuss either of them.  They
10:19:56 14  don't discuss the prior art.  They talk about the invention,
10:19:59 15  the invention of the '333 patent, the patent in suit, is the
10:20:03 16  same for both.
10:20:05 17      The analysis of commercial success is the same
10:20:10 18  for both.  These weren't experts that were coming in and
10:20:12 19  saying let me tell you about the prior art.  That has
10:20:16 20  nothing to do with their testimony.
10:20:17 21      THE COURT:  That's what I thought I heard, Mr.
10:20:20 22  James.  I am going to deny your motion, without prejudice to
10:20:23 23  your renewing your argument as I said earlier.
10:20:27 24      MR. JAMES:  I understand.
10:20:29 25      THE COURT:  We have No. 1, for this Dr. Raines,

13

```
10:20:40   1   that I think the plaintiff complains is a witness I
10:20:44   2   shouldn't hear regarding prosecution history.  Is that
10:20:48   3   correct, Mr. Blumenfeld?
10:20:49   4           MR. BLUMENFELD:  It is, Your Honor.  Ms. Ellis
10:20:51   5   is the other side of that.  These are two experts, one a
10:20:57   6   scientist on their side, a patent person on our side.  The
10:21:02   7   question is whether either of them should be permitted to
10:21:09   8   testify about the prosecution history.  Different reasons by
10:21:14   9   the different parties as to why they think they shouldn't.
10:21:20  10           Again, I leave it to Your Honor whether you
10:21:22  11   think it makes more sense to deal with it now or deal with
10:21:26  12   it at trial when you have context for both of these
10:21:30  13   witnesses, who they are and what they are saying.  If you do
10:21:34  14   want to hear about it, Mr. Haug is prepared to talk about
10:21:39  15   both of them.  I leave it to you.
10:21:40  16           THE COURT:  I am willing to wait if the parties
10:21:43  17   would prefer.  I think you know, and I think Ms. Keller
10:21:49  18   knows, I wouldn't typically be inclined to hear from
10:21:53  19   witnesses of this type.
10:21:55  20           MR. BLUMENFELD:  Your Honor, these are not
10:21:58  21   witnesses, I think on either side, who are going to come in
10:22:01  22   and say, at least on our side, I will talk about our expert,
10:22:06  23   the patent is not unenforceable because there is a
10:22:12  24   prosecution laches defense and what Ms. Ellis would do is go
10:22:17  25   through the file history to explain what happened during
```

14

```
10:22:21   1   file history.  That's why we are offering her.
10:22:26   2           Again, I leave it to you whether you want to
10:22:30   3   hear about that on both sides today or in trial where there
10:22:36   4   is some context for what the issue is.
10:22:38   5           THE COURT:  Let's hear the other perspective.
10:22:43   6           MR. WIESEN:  Your Honor, on behalf of Fresenius
10:22:46   7   on these two issues.
10:22:48   8           I agree with Mr. Blumenfeld that these are in
10:22:52   9   some ways two sides of the same coin and they respond to
10:22:56  10   each other.  I think the two parties have taken a different
10:22:59  11   approach to how to what expert is appropriate to provide
10:23:03  12   analysis for the Court on the prosecution history related to
10:23:06  13   the prosecution laches issue.
10:23:09  14           Dr. Raines is a peptide chemist.  He is not a
10:23:12  15   patent lawyer.  And the subject matter of his testimony is
10:23:16  16   to run through the scientific issues related to the
10:23:21  17   prosecution history, to discuss scientifically what the
10:23:25  18   Patent Office was asking for the information that Shire or
10:23:30  19   its predecessor Hopes Kab (phonetic) at the time, and when
10:23:34  20   they could have provided a scientific response certainly
10:23:38  21   sets the context for that with the prosecution history.  He
10:23:41  22   can't do that scientific analysis without looking at what
10:23:44  23   the examiner is asking for.  But fundamentally his testimony
10:23:48  24   is not about the prosecution history but is about the
10:23:52  25   science related to the prosecution history.
```

15

```
10:23:55   1           We don't intend to have him present opinions
10:23:58   2   about Patent Office office procedure but rather about the
10:24:02   3   scientific that have been run by Shire.
10:24:08   4           Dr. Ellis --
10:24:10   5           THE COURT:  That strikes me as different.  I am
10:24:12   6   agreeing with you.
10:24:14   7           MR. WIESEN:  Dr. Ellis, on the other hand, is a
10:24:17   8   more classic patent law expert.  She has spent her career
10:24:21   9   working at the Patent Office and then prosecuting patents.
10:24:23  10   While she does have a Ph.D., they didn't ask her to do any
10:24:27  11   technical analysis.  And she fundamentally runs through the
10:24:31  12   prosecution history and says this is consistent with this
10:24:36  13   rule, this is allowed because of this rule, this timing is
10:24:39  14   allowed to just file a continuation application rather than
10:24:42  15   provide a substantive response.
10:24:44  16           We think there is really two reasons action that
10:24:46  17   Dr. Ellis need not testify.  The first is what Your Honor
10:24:50  18   referred to, which is that we can read the prosecution
10:24:55  19   history here.  With a jury trial maybe it would be
10:24:59  20   different.  With a Bench trial, I don't think there is
10:25:02  21   anything too complicated.
10:25:03  22           The second issue is whether it is even really
10:25:06  23   particularly relevant to the prosecution laches issue.  If
10:25:10  24   you look at the case where the Federal Circuit sort of
10:25:15  25   brought this doctrine back to the forefront about 15 years
```

16

```
10:25:18   1   ago, the Symbol Technologies v. Lemelson case, the way they
10:25:22   2   ask the question is whether, even though the patentee
10:25:25   3   complied with the Patent Office procedures, if they delayed
10:25:28   4   too much without an explanation is laches appropriate.
10:25:31   5           So having Dr. Ellis show up and explain that
10:25:34   6   they complied with the Patent Office procedures is
10:25:36   7   irrelevant.  I don't think it's even really disputed.  We
10:25:41   8   are not contesting they didn't comply with the strict orders
10:25:44   9   of the MPEP and file continuations when they were legally
10:25:49  10   available.
10:25:51  11           The argument is despite following those rules,
10:25:54  12   Symbol Technologies sayings prosecution laches is available
10:25:57  13   as a defense.  That is what our argument is here.
10:26:00  14           MR. BLUMENFELD:  Your Honor, I will defer to Mr.
10:26:03  15   Haug.
10:26:03  16           THE COURT:  You did say that.
10:26:04  17           MR. HAUG:  No problem.  This is Ed Haug.
10:26:11  18           With respect to first Dr. Ellis, we are not
10:26:14  19   offering Dr. Ellis as a patent attorney to talk about patent
10:26:18  20   law.  She has been offered based on her expertise and as an
10:26:24  21   expert Patent Office practice and procedures.  I think those
10:26:29  22   issues are important in this particular case.  We are
10:26:32  23   talking about pre-GATT prosecution.  We are also talking
10:26:36  24   about utilities guidelines that were used by the Patent
10:26:39  25   Office that are relevant here.  She speaks about that, which
```

17

1 we think would be helpful to the Court to appreciate the
2 context of the prosecution here.
3         We are not offering Dr. Ellis to talk about the
4 core legal issues of the prosecution and delay or no delay.
5         And also Dr. Ellis was in the Patent Office for
6 about 20 years, including during the relevant time period of
7 the prosecution here, and also in the art group that this
8 application was prosecution in, which is the biotechnology
9 group.
10         We think for all those reasons she would be
11 helpful to the Court to help the Court better understand the
12 prosecution to the extent Your Honor needs that help.
13         That is our view on Dr. Ellis.
14         I think it's r. Raines, it's different, because
15 he is a scientist and has no experience in Patent Office
16 practice. And his report put in in this case, which is very
17 lengthy, doesn't in fact walk through the prosecution. That
18 is the primary reason why we objected.
19         I just heard Mr. Wiesen say maybe he is not
20 going to offer him to do that and he is going to be limited
21 to some scientific opinions which may not be so
22 objectionable if objectionable at all. We won't know that
23 until trial.
24         THE COURT: Let's start there then and gets get
25 Mr. Wiesen to react. I think you are right, Mr. Haug. That

18

1 is what I heard as well.
2         MR. WIESEN: Your Honor, I think that's right
3 with the caveat that, without preferring to the prosecution
4 Dr. Raines can't talk about the scientific issues. In other
5 words, what we will see in the prosecution history is that
6 the examiner was asking for certain kinds of data. We do
7 intend to have Dr. Raines talk about the prosecution history
8 just to the extent he points out that was the type of data
9 that was being requested that talks about the scientific
10 issues about what that data is and what was available.
11         So the prosecution history certainly will come
12 up to set the frame and context.
13         THE COURT: Mr. Haug, with that proviso, would
14 you object?
15         MR. HAUG: I may not with that proviso, if I
16 fully understand it, which I am not sure I will until I hear
17 it.
18         THE COURT: We can do some realtime work as
19 well. I think maybe this witness in your view may be less
20 problematic than you originally thought, perhaps.
21         MR. HAUG: Perhaps. I can't predict.
22         THE COURT: Okay. Go ahead, Mr. Wiesen.
23         MR. WIESEN: That was all I had on Dr. Raines.
24         Dr. Ellis, I think what we heard from Mr. Haug
25 is really that she is going to run through some of the legal

19

1 issues, what happens with a pre-GATT versus a post-GATT
2 patent and when they expire and how the expiration dates are
3 calculated, some guidelines that they are certainly entitled
4 to cite and argue from, but that I don't think we need a
5 witness to explain.
6         Then running through the prosecution history,
7 which, again, I think, although it's somewhat lengthy, can
8 be done without a witness.
9         THE COURT: Mr. Haug, I tend to not want to
10 spend time doing things from the stand, the witness box, we
11 don't need to spend time doing.
12         With that in mind, I will let the witness take
13 the stand, but I think you should tailor their testimony
14 accordingly.
15         MR. HAUG: Absolutely. Thank you, Your Honor.
16         THE COURT: The same with regard to Dr. Raines,
17 Mr. Wiesen.
18         MR. WIESEN: Absolutely, Your Honor. Thank you.
19         THE COURT: Okay. What do we have left now?
20         MR. BLUMENFELD: Your Honor, I don't think we
21 have anything else. The issues that were raised in the body
22 of the pretrial order, the parties have resolved. I guess
23 that just leaves the question for us whether you want us to
24 submit a new cover order that reflects those agreements or
25 whether the agreements we have are sufficient for your

20

1 purposes.
2         THE COURT: I think they are sufficient, unless
3 counsel feel more comfortable spending the time to submit an
4 additional order. I am comfortable, if the parties are.
5         MR. BLUMENFELD: Certainly the plaintiffs are.
6 We think we know what the agreements are.
7         THE COURT: Mr. Wiesen.
8         MR. JAMES: Your Honor, I would we would be
9 comfortable with that as well. We know what the two or
10 three issues were. We know what the agreement was.
11         THE COURT: Then that's all I need to hear.
12         Anything else then, counsel?
13         MR. HAUG: Your Honor, a question. Your
14 preference for opening statements and length, if at all?
15         THE COURT: I do invite openings with emphasis
16 on brevity. There is inevitably going to be some degree of
17 repetition. I would like the parties to keep it down to a
18 dull roar if you could. After a point, I will get it. I
19 don't anticipate wanting to entertain closings at this
20 juncture. I usually don't.
21         It's not unheard of that I have asked. If I do,
22 I expect good lawyers to get on their feet and even when not
23 completely prepared to respond to Court's questions. But at
24 this juncture, I am not asking you to prepare a formal
25 closings.

21

| | | |
|---|---|---|
| 10:32:38 | 1 | MR. JAMES: Thank you, Your Honor. |
| 10:32:40 | 2 | MR. WIESEN: Your Honor, as a followup to Mr. |
| 10:32:42 | 3 | Haug's comment. |
| 10:32:44 | 4 | To flag it, I think we put in the pretrial order |
| 10:32:47 | 5 | that the parties have agreed, since it's an invalidity and |
| 10:32:50 | 6 | unenforceability case, that defendants are going to go |
| 10:32:53 | 7 | first. So you are not surprised by that on Monday, I wanted |
| 10:33:00 | 8 | to flag that. Although there is, partially due to some |
| 10:33:04 | 9 | witness availability as well, the expectation is that we |
| 10:33:07 | 10 | will go first on substantive issues, the defendants will |
| 10:33:11 | 11 | rebut, and then the plaintiffs will reply with witnesses on |
| 10:33:14 | 12 | secondary considerations that we have discussed. |
| 10:33:18 | 13 | THE COURT: That is fine. It's almost 20 years, |
| 10:33:21 | 14 | Mr. Wiesen. Tough to find something new under the sun. |
| 10:33:26 | 15 | MR. WIESEN: Understood, Your Honor. |
| 10:33:28 | 16 | THE COURT: Anything else, counsel? |
| 10:33:29 | 17 | MR. JAMES: Your Honor, we do have one witness, |
| 10:33:37 | 18 | Dr. Pines, a clinician, who will be testifying now. As a |
| 10:33:44 | 19 | busy physician, he has some scheduling issues. He can't |
| 10:33:49 | 20 | testify on Wednesday. He can testify on Tuesday or |
| 10:33:54 | 21 | Thursday. I don't know about Friday. I don't think he is |
| 10:33:58 | 22 | available then, either. |
| 10:33:59 | 23 | We will work with the other side to try to make |
| 10:34:02 | 24 | sure that doesn't impact the schedule otherwise. |
| 10:34:04 | 25 | THE COURT: If the parties are comfortable with |

22

| | | |
|---|---|---|
| 10:34:06 | 1 | taking a witness out of turn, if that is the case, if that |
| 10:34:10 | 2 | is what you are suggesting needs to be done, Mr. James, I am |
| 10:34:13 | 3 | fine. If there is an objection, obviously, I have to take |
| 10:34:17 | 4 | it up. I am comfortable with you working that out on your |
| 10:34:20 | 5 | own. |
| 10:34:21 | 6 | MR. HAUG: Your Honor, we have already agreed to |
| 10:34:24 | 7 | allow the witness to go out of turn for his convenience. |
| 10:34:28 | 8 | That is not an issue. |
| 10:34:31 | 9 | THE COURT: Okay. |
| 10:34:31 | 10 | Mr. James, does that satisfy you? |
| 10:34:34 | 11 | MR. JAMES: Your Honor. |
| 10:34:35 | 12 | THE COURT: Okay. Unless there is anything |
| 10:34:39 | 13 | else, have a good week, counsel. Take care. |
| | 14 | (Conference concluded at 10:35 a.m.) |
| | 15 | - - - |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

**'**

**'333** [1] - 12:15

**1**

**1** [1] - 12:25
**10** [1] - 3:9
**103** [3] - 5:1, 10:2, 11:5
**10:00** [1] - 1:12
**10:30** [2] - 3:8, 3:10
**10:35** [1] - 22:14
**11** [1] - 3:6
**13** [1] - 6:21
**14** [10] - 4:3, 4:5, 4:8, 6:23, 9:9, 9:10, 9:14, 9:15, 10:1, 10:2
**15** [3] - 4:5, 4:9, 15:25
**15-1102-GMS** [1] - 1:9
**1989** [1] - 10:8
**1997** [1] - 10:9

**2**

**20** [2] - 17:6, 21:13
**201** [1] - 7:23
**2011** [1] - 7:16
**2012** [1] - 7:16
**2016** [1] - 7:22
**2018** [1] - 1:11
**23** [1] - 1:11
**26** [1] - 5:19

**3**

**3rd** [1] - 7:23

**4**

**491** [1] - 7:24

**5**

**536** [1] - 7:24

**7**

**7803** [1] - 5:18

**9**

**9** [1] - 3:6

**A**

**a.m** [2] - 1:12, 22:14
**able** [1] - 3:21
**absolutely** [2] - 19:15, 19:18
**accord** [1] - 7:22
**accordingly** [1] - 19:14
**act** [1] - 11:23
**action** [1] - 15:16
**Action** [1] - 1:4
**additional** [1] - 20:4
**addressed** [1] - 10:17
**adequate** [1] - 3:25
**affirmed** [1] - 7:20
**ago** [2] - 9:18, 16:1
**agree** [2] - 3:24, 14:8
**agreed** [2] - 21:5, 22:6
**agreeing** [1] - 15:6
**agreement** [1] - 20:10
**agreements** [3] - 19:24, 19:25, 20:6
**ahead** [2] - 11:13, 18:22
**airport** [1] - 3:7
**allow** [1] - 22:7
**allowed** [2] - 15:13, 15:14
**almost** [1] - 21:13
**analysis** [8] - 9:13, 9:17, 10:3, 12:17, 14:12, 14:22, 15:11
**analyze** [1] - 12:12
**AND** [1] - 1:2
**anticipate** [1] - 20:19
**anyway** [1] - 3:21
**APPEARANCES** [2] - 1:16, 2:1
**application** [2] - 15:14, 17:8
**apply** [2] - 9:9, 10:1
**appreciate** [1] - 17:1
**approach** [1] - 14:11
**appropriate** [2] - 14:11, 16:4
**argue** [1] - 19:4
**arguing** [1] - 8:13
**argument** [6] - 5:21, 10:18, 10:21, 12:23, 16:11, 16:13
**arose** [2] - 10:8, 10:9
**Arsht** [1] - 1:18
**art** [8] - 6:25, 8:14, 9:11, 10:7, 12:13, 12:14, 12:19, 17:7
**aside** [1] - 3:14
**asserting** [1] - 8:4
**assertions** [1] - 5:22
**attorney** [1] - 16:19
**availability** [1] - 21:9
**available** [4] - 16:10, 16:12, 18:10, 21:22
**AVENTIS** [1] - 1:4

**B**

**barring** [1] - 3:10
**based** [4] - 6:24, 9:10, 9:11, 16:20
**BEFORE** [1] - 1:14
**begin** [1] - 3:16
**behalf** [1] - 14:6
**Bell** [6] - 5:4, 5:7, 5:14, 6:3, 6:11
**Bell's** [1] - 6:16
**Bench** [2] - 3:9, 15:20
**better** [1] - 17:11
**Bill** [1] - 2:18
**biotechnology** [1] - 17:8
**bit** [3] - 3:4, 7:2, 7:3
**Blumenfeld** [8] - 2:12, 3:25, 8:9, 9:6, 10:23, 12:7, 13:3, 14:8
**BLUMENFELD** [13] - 1:17, 2:11, 3:17, 4:4, 6:9, 9:7, 10:25, 12:9, 13:4, 13:20, 16:14, 19:20, 20:5
**body** [1] - 19:21
**box** [1] - 19:10
**brevity** [1] - 20:16
**brief** [1] - 8:8
**briefs** [1] - 12:2
**brought** [1] - 15:25
**busy** [1] - 21:19

**C**

**calculated** [1] - 19:3
**care** [2] - 5:9, 22:13
**career** [1] - 15:8
**case** [18] - 3:15, 5:2, 5:18, 6:16, 6:17, 6:18, 6:19, 7:16, 7:19, 9:19, 11:2, 11:8, 15:24, 16:1, 16:22, 17:16, 21:6, 22:1
**caveat** [1] - 18:3
**certain** [2] - 9:11, 18:6
**certainly** [6] - 3:9, 11:25, 14:20, 18:11, 19:3, 20:5
**chance** [1] - 11:13
**change** [6] - 7:8, 7:9, 7:10, 8:3, 9:13
**changes** [2] - 8:7, 9:23
**chemist** [1] - 14:14
**CHUBB** [1] - 1:20
**Chubb** [1] - 2:14
**Circuit** [3] - 7:19, 8:10, 15:24
**circumstances** [2] - 8:23, 10:24
**cite** [1] - 19:4
**Civil** [1] - 1:4
**Claim** [7] - 6:23, 9:9, 9:10, 9:14, 9:15, 10:1, 10:2
**claim** [2] - 6:23, 9:10
**claimed** [2] - 8:16, 10:8
**claims** [1] - 8:16
**classic** [1] - 15:8
**clear** [2] - 7:12, 11:19
**clinician** [5] - 5:5, 6:4, 6:5, 8:18, 21:18
**closings** [2] - 20:19, 20:25
**coin** [1] - 14:9
**colleague** [1] - 10:23
**comfortable** [5] - 20:3, 20:4, 20:9, 21:25, 22:4
**coming** [1] - 12:18
**comment** [1] - 21:3
**commercial** [11] - 5:9, 6:2, 6:15, 7:2, 7:13, 9:14, 9:25, 10:10, 10:13, 11:7, 12:17
**complains** [1] - 13:1
**completed** [1] - 10:16
**completely** [1] - 20:23
**complicated** [1] - 15:21
**complied** [2] - 16:3, 16:6
**comply** [1] - 16:8
**compound** [2] - 8:16, 10:11
**concern** [1] - 11:25
**concluded** [1] - 22:14
**conclusions** [1] - 6:20
**Conference** [2] - 1:12, 22:14
**consideration** [1] - 7:21
**considerations** [11] - 5:6, 7:1, 7:6, 7:13, 7:17, 8:10, 9:3, 9:9, 11:5, 21:12
**considered** [1] - 8:1
**considering** [1] - 7:24
**consistent** [1] - 15:12
**contesting** [1] - 16:8
**context** [7] - 8:20, 9:2, 13:12, 14:4, 14:21, 17:2, 18:12
**contexts** [1] - 8:12
**continuation** [1] - 15:14
**continuations** [1] - 16:9
**CONTINUED** [1] - 2:1
**convenience** [1] - 22:7
**conversations** [1] - 4:6
**core** [1] - 17:4
**correct** [1] - 13:3
**Counsel** [2] - 1:22, 2:7
**counsel** [10] - 2:9, 2:20, 10:4, 11:9, 11:13, 12:3, 20:3, 20:12, 21:16, 22:13
**counterpart** [1] - 6:4
**couple** [1] - 9:18
**course** [2] - 3:2, 3:5
**Court** [6] - 7:25, 11:21, 14:12, 17:1, 17:11
**COURT** [38] - 1:1, 2:9, 2:15, 2:20, 3:23, 4:2, 4:18, 5:13, 6:6, 6:8, 8:8, 9:5, 10:4, 10:22, 11:9, 12:6, 12:21, 12:25, 13:16, 14:5, 15:5, 16:16, 17:24, 18:13, 18:18, 18:22, 19:9, 19:16, 19:19, 20:2, 20:7, 20:11, 20:15, 21:13, 21:16, 21:25, 22:9, 22:12
**Court's** [1] - 20:23
**cover** [2] - 4:7, 19:24
**COY** [1] - 2:4

**D**

**DAREN** [1] - 1:17
**DARYL** [1] - 2:3
**Daryl** [1] - 2:18
**data** [3] - 18:6, 18:8, 18:10
**dates** [1] - 19:2
**days** [4] - 3:15, 3:18, 3:21, 4:7
**DC** [1] - 2:6
**deal** [2] - 13:11
**Defendant** [2] - 1:9, 2:7
**defendant** [3] - 2:16, 4:12, 4:13
**defendant 's** [1] - 3:23
**defendants** [2] - 21:6, 21:10
**defense** [6] - 6:1, 10:14, 11:9, 12:12, 13:24, 16:13
**defenses** [1] - 5:2
**defer** [1] - 16:14
**degree** [1] - 20:16

**DELAWARE** [1] - 1:2
**Delaware** [2] - 1:11, 1:15
**delay** [2] - 17:4
**delayed** [1] - 16:3
**demonstrate** [2] - 8:12, 8:18
**demonstrated** [1] - 8:22
**deny** [1] - 12:22
**depositions** [4] - 5:23, 7:9, 8:7, 10:18
**Derek** [1] - 2:12
**despite** [1] - 16:11
**DEUTSCHLAND** [1] - 1:4
**developed** [1] - 11:18
**difference** [1] - 10:6
**different** [9] - 9:16, 10:3, 11:15, 13:8, 13:9, 14:10, 15:5, 15:20, 17:14
**discovery** [5] - 7:8, 8:25, 9:20, 10:15, 10:16
**discuss** [3] - 12:13, 12:14, 14:17
**discussed** [1] - 21:12
**discussion** [1] - 11:14
**disputed** [1] - 16:7
**DISTRICT** [2] - 1:1, 1:2
**District** [1] - 1:15
**doctor** [1] - 6:12
**doctor/clinician** [1] - 8:18
**doctrine** [1] - 15:25
**done** [5] - 6:13, 9:20, 9:21, 19:8, 22:2
**double** [23] - 5:3, 5:10, 5:12, 5:16, 5:20, 6:1, 6:14, 6:19, 6:22, 7:7, 7:11, 7:14, 7:18, 7:25, 8:5, 8:11, 9:16, 9:19, 10:17, 11:2, 11:6, 12:4, 12:10
**double-patenting** [1] - 5:12
**down** [1] - 20:17
**Dr** [34] - 4:11, 4:20, 5:4, 5:5, 5:7, 5:14, 5:15, 6:3, 6:4, 6:5, 6:10, 6:11, 6:12, 6:15, 6:16, 12:25, 14:14, 15:4, 15:7, 15:17, 16:5, 16:18, 16:19, 17:3, 17:5, 17:13, 18:4, 18:7, 18:23, 18:24, 19:16, 21:18
**dropped** [3] - 5:1, 7:4, 8:4
**drug** [1] - 6:16
**due** [1] - 21:8
**Duke** [1] - 3:3
**dull** [1] - 20:18
**during** [4] - 11:14, 12:1, 13:25, 17:6

### E

**economic** [1] - 5:8
**economist** [6] - 5:5, 5:14, 6:3, 6:5, 6:12, 8:18
**Ed** [2] - 2:13, 16:17
**EDGAR** [1] - 1:19
**effort** [1] - 8:17
**either** [8] - 8:19, 11:1, 11:8, 11:14, 12:13, 13:7, 13:21, 21:22
**Eli** [1] - 7:16
**ELIZABETH** [1] - 1:20
**Ellis** [14] - 4:12, 4:21, 13:4, 13:24, 15:4, 15:7, 15:17, 16:5, 16:18, 16:19, 17:3, 17:5, 17:13, 18:24
**emphasis** [1] - 20:15
**entered** [1] - 5:1
**entertain** [1] - 20:19
**entitled** [1] - 19:3
**erroneous** [2] - 7:19, 7:21
**ESQ** [11] - 1:17, 1:17, 1:19, 1:19, 1:20, 1:20, 2:2, 2:3, 2:4, 2:4, 2:5
**evening** [1] - 3:6
**evidence** [7] - 6:2, 7:17, 7:21, 8:2, 8:6, 11:11, 11:13
**evidentiary** [1] - 4:10
**exactly** [2] - 11:5, 11:8
**examiner** [2] - 14:23, 18:6
**exclude** [1] - 11:11
**excluded** [1] - 7:17
**Exhibit** [4] - 4:2, 4:5, 4:8
**expect** [1] - 20:22
**expectation** [1] - 21:9
**experience** [1] - 17:15
**expert** [10] - 4:12, 5:4, 5:7, 5:24, 8:23, 12:5, 13:22, 14:11, 15:8, 16:21
**expertise** [1] - 16:20
**experts** [5] - 5:21, 10:17, 10:19, 12:18, 13:5

**expiration** [1] - 19:2
**expire** [1] - 19:2
**explain** [3] - 13:25, 16:5, 19:5
**explanation** [1] - 16:4
**extent** [2] - 17:12, 18:8

### F

**F.Supp** [1] - 7:23
**fact** [1] - 17:17
**factors** [1] - 8:19
**facts** [1] - 9:24
**FAHNESTOCK** [1] - 1:17
**Fahnestock** [1] - 2:12
**Federal** [3] - 7:19, 8:10, 15:24
**feet** [1] - 20:22
**felt** [7] - 6:16, 7:1, 7:13, 9:15, 9:25, 10:12, 11:7
**few** [1] - 4:6
**file** [4] - 13:25, 14:1, 15:14, 16:9
**fill** [1] - 4:4
**findings** [1] - 6:20
**fine** [2] - 21:13, 22:3
**finish** [2] - 3:22, 4:1
**finishing** [1] - 3:19
**first** [5] - 2:25, 15:17, 16:18, 21:7, 21:10
**five** [2] - 3:14, 3:20
**flag** [2] - 21:4, 21:8
**following** [1] - 16:11
**followup** [1] - 21:2
**footnote** [1] - 7:18
**FOR** [1] - 1:2
**forefront** [1] - 15:25
**formal** [1] - 20:24
**four** [1] - 3:18
**frame** [1] - 18:12
**framework** [1] - 5:9
**frankly** [1] - 11:19
**Fresenius** [4] - 6:21, 7:4, 9:19, 14:6
**FRESENIUS** [1] - 1:8
**Friday** [2] - 3:22, 21:21
**full** [2] - 3:20, 6:10
**fully** [1] - 18:16
**fulsomely** [1] - 11:18
**fundamentally** [2] - 14:23, 15:11

### G

**GATT** [3] - 16:23, 19:1
**Generally** [1] - 7:24

**Geneva** [1] - 7:19
**given** [2] - 11:11, 11:19
**GMBH** [1] - 1:5
**Goodwin** [2] - 2:5, 2:19
**great** [1] - 4:2
**GREGORY** [1] - 1:14
**group** [2] - 17:7, 17:9
**guess** [2] - 12:8, 19:22
**guidelines** [2] - 16:24, 19:3
**guys** [1] - 3:11

### H

**hand** [1] - 15:7
**handle** [1] - 4:20
**happy** [1] - 4:15
**Haug** [10] - 1:21, 2:13, 2:14, 13:14, 16:15, 16:17, 17:25, 18:13, 18:24, 19:9
**HAUG** [7] - 1:19, 16:17, 18:15, 18:21, 19:15, 20:13, 22:6
**Haug's** [1] - 21:3
**hear** [10] - 6:8, 8:8, 9:21, 13:2, 13:14, 13:18, 14:3, 14:5, 18:16, 20:11
**heard** [7] - 9:23, 11:12, 12:3, 12:21, 17:19, 18:1, 18:24
**hearing** [1] - 12:8
**help** [2] - 17:11, 17:12
**helpful** [3] - 2:23, 17:1, 17:11
**history** [15] - 13:2, 13:8, 13:25, 14:1, 14:12, 14:17, 14:21, 14:24, 14:25, 15:12, 15:19, 18:5, 18:7, 18:11, 19:6
**Hoechst** [1] - 8:15
**Hofmann** [1] - 6:5
**Honor** [38] - 2:11, 2:17, 3:17, 3:20, 3:24, 4:4, 4:13, 4:17, 4:19, 4:23, 5:19, 6:9, 7:15, 8:9, 9:7, 9:18, 10:5, 11:24, 12:9, 13:4, 13:10, 13:20, 14:6, 15:17, 16:14, 17:12, 18:2, 19:15, 19:18, 19:20, 20:8, 20:13, 21:1, 21:2, 21:15, 21:17, 22:6, 22:11
**Honor's** [1] - 12:2

**HONORABLE** [1] - 1:14
**hopeful** [1] - 3:19
**Hopes** [1] - 14:19

### I

**impact** [2] - 3:13, 21:24
**important** [1] - 16:22
**IN** [2] - 1:1, 1:2
**inclined** [1] - 13:18
**including** [1] - 17:6
**incorporates** [1] - 6:21
**indicators** [1] - 8:1
**inevitably** [1] - 20:16
**information** [1] - 14:18
**intend** [2] - 15:1, 18:7
**intermediate** [2] - 8:16, 10:8
**invalid** [1] - 7:25
**invalidity** [1] - 21:5
**invention** [7] - 9:14, 9:15, 11:3, 11:4, 11:7, 12:14, 12:15
**invite** [1] - 20:15
**irrelevant** [1] - 16:7
**issue** [17] - 4:11, 4:13, 4:20, 4:22, 4:24, 6:6, 6:10, 6:24, 7:15, 9:8, 11:20, 14:4, 14:13, 15:22, 15:23, 22:8
**issues** [15] - 4:7, 4:8, 4:10, 4:16, 14:7, 14:16, 16:22, 17:4, 18:4, 18:10, 19:1, 19:21, 20:10, 21:10, 21:19

### J

**JACK** [1] - 1:17
**Jack** [1] - 2:12
**JAMES** [13] - 2:4, 3:24, 4:19, 5:14, 6:7, 8:9, 10:5, 11:24, 12:24, 20:8, 21:1, 21:17, 22:11
**James** [6] - 2:18, 11:9, 12:6, 12:22, 22:2, 22:10
**January** [1] - 1:11
**JOHN** [1] - 2:4
**judge** [1] - 11:10
**Judge** [2] - 1:14, 7:22
**jump** [1] - 4:19
**juncture** [3] - 11:11, 20:20, 20:24

jury [1] - 15:19

### K

Kab [1] - 14:19
KABI [1] - 1:8
Kaplan [5] - 5:5, 5:15, 6:3, 6:11, 6:12
Kaplan's [1] - 6:17
KAREN [1] - 2:2
Karen [1] - 2:17
keep [1] - 20:17
KELLER [2] - 2:2, 2:17
Keller [4] - 2:2, 2:18, 13:17
kind [1] - 4:16
kinds [1] - 18:6
knows [1] - 13:18
Koy [1] - 2:19
KUZMICH [1] - 1:19
Kuzmich [1] - 2:13

### L

laches [6] - 5:3, 13:24, 14:13, 15:23, 16:4, 16:12
last [5] - 4:6, 4:14, 4:23, 7:5, 10:4
late [1] - 11:21
Laura [1] - 2:13
LAURA [1] - 1:20
law [2] - 15:8, 16:20
lawyer [1] - 14:15
lawyers [2] - 2:22, 20:22
least [1] - 13:22
leave [4] - 3:7, 13:10, 13:15, 14:2
leaves [1] - 19:23
left [2] - 4:11, 19:19
legal [4] - 5:8, 7:12, 17:4, 18:25
legally [1] - 16:9
Lemelson [1] - 16:1
length [1] - 20:14
lengthy [2] - 17:17, 19:7
less [2] - 3:20, 18:19
letter [3] - 4:3, 4:13, 4:23
lies [1] - 5:8
Lilly [1] - 7:16
limited [2] - 11:20, 17:20
line [2] - 2:10, 2:22
listen [1] - 11:13
litigation [2] - 3:3, 8:17
Liz [1] - 2:13

LLC [2] - 1:4, 1:8
LLP [4] - 1:18, 1:21, 2:2, 2:5
long-felt [7] - 6:16, 7:1, 7:13, 9:15, 9:25, 10:12, 11:7
look [2] - 4:24, 15:24
looking [1] - 14:22

### M

magic [1] - 12:8
matter [2] - 5:17, 14:15
mention [1] - 2:25
mentioned [1] - 8:24
might [1] - 5:22
mind [1] - 19:12
mishaps [1] - 3:10
Monday [1] - 21:7
morning [7] - 2:9, 2:10, 2:11, 2:15, 2:17, 3:6, 3:12
Morris [2] - 1:18, 2:12
most [1] - 4:8
motion [1] - 12:22
MPEP [1] - 16:9
MR [36] - 2:11, 3:17, 3:24, 4:4, 4:19, 5:14, 6:7, 6:9, 8:9, 9:7, 10:5, 10:25, 11:24, 12:9, 12:24, 13:4, 13:20, 14:6, 15:7, 16:14, 16:17, 18:2, 18:15, 18:21, 18:23, 19:15, 19:18, 19:20, 20:5, 20:8, 20:13, 21:1, 21:15, 21:17, 22:6, 22:11
MS [1] - 2:17
multiple [1] - 2:22
MURPHY [1] - 1:20
Murphy [1] - 2:13

### N

need [13] - 2:25, 3:7, 6:16, 7:2, 7:13, 9:15, 9:25, 10:12, 11:7, 15:17, 19:4, 19:11, 20:11
needed [1] - 9:20
needs [2] - 17:12, 22:2
New [2] - 1:21, 2:14
new [3] - 3:11, 19:24, 21:14
news [1] - 3:12
next [2] - 3:8, 4:1
Nichols [2] - 1:18, 2:12

night [3] - 4:14, 4:23, 7:5
none [1] - 8:23
nonobviousness [1] - 8:2
nothing [4] - 8:7, 9:23, 10:3, 12:20
notice [6] - 5:19, 6:6, 6:10, 9:3, 10:20
NY [1] - 1:21

### O

object [1] - 18:14
objected [1] - 17:18
objection [1] - 22:3
objectionable [2] - 17:22
objections [1] - 11:25
objective [1] - 8:1
obvious [9] - 5:3, 5:11, 6:24, 9:10, 10:1, 10:2, 11:3, 11:6, 12:4
obviously [1] - 22:3
obviousness [36] - 5:2, 5:7, 5:10, 5:16, 5:20, 6:1, 6:14, 6:18, 6:19, 6:22, 7:4, 7:7, 7:10, 7:11, 7:14, 7:15, 7:18, 7:25, 8:4, 8:11, 8:13, 9:12, 9:17, 10:7, 10:17, 11:2, 12:10, 12:11
occur [1] - 10:19
ODP [3] - 5:11, 9:1, 10:21
OF [1] - 1:2
offer [1] - 17:20
offered [1] - 16:20
offering [3] - 14:1, 16:19, 17:3
Office [9] - 14:18, 15:2, 15:9, 16:3, 16:6, 16:21, 16:25, 17:5, 17:15
office [1] - 15:2
one [4] - 3:15, 8:19, 13:5, 21:17
one-patent [1] - 3:15
opening [1] - 20:14
openings [1] - 20:15
opinion [2] - 7:20, 7:23
opinions [4] - 5:20, 10:20, 15:1, 17:21
opportunity [3] - 4:24, 8:25, 11:20
opposed [1] - 10:1
order [7] - 4:7, 5:1,

6:21, 19:22, 19:24, 20:4, 21:4
orders [1] - 16:8
originally [1] - 18:20
ORPHAN [1] - 1:4
otherwise [1] - 21:24
own [1] - 22:5
owned [2] - 8:15, 10:9

### P

partially [1] - 21:8
particular [2] - 8:22, 16:22
particularly [1] - 15:23
parties [9] - 4:6, 13:9, 13:16, 14:10, 19:22, 20:4, 20:17, 21:5, 21:25
Partners [2] - 1:21, 2:14
party [1] - 2:22
patent [16] - 3:2, 3:15, 5:17, 5:18, 7:24, 8:15, 10:9, 12:15, 13:6, 13:23, 14:15, 15:8, 16:19, 19:2
Patent [9] - 14:18, 15:2, 15:9, 16:3, 16:6, 16:21, 16:24, 17:5, 17:15
patentee [1] - 16:2
patenting [23] - 5:3, 5:11, 5:12, 5:16, 5:21, 6:1, 6:15, 6:19, 6:23, 7:8, 7:11, 7:15, 7:18, 7:25, 8:5, 8:11, 9:16, 9:19, 10:18, 11:3, 11:6, 12:4, 12:10
patents [2] - 5:12, 15:9
peptide [1] - 14:14
per [2] - 8:14, 9:1
perhaps [4] - 11:14, 11:17, 18:20, 18:21
period [1] - 17:6
permitted [2] - 9:18, 13:7
person [1] - 13:6
perspective [1] - 14:5
Ph.D [2] - 1:19, 15:10
phonetic [1] - 14:19
physician [2] - 6:12, 21:19
picture [1] - 11:19
Pines [2] - 6:5, 21:18
plaintiff [2] - 3:16, 13:1
plaintiffs [6] - 2:10,

5:4, 10:9, 12:4, 20:5, 21:11
Plaintiffs [2] - 1:6, 1:22
plan [1] - 3:8
plane [1] - 3:8
planning [1] - 3:13
pleaded [1] - 12:12
plus [1] - 3:19
point [6] - 3:23, 7:12, 9:8, 10:15, 12:6, 20:18
points [1] - 18:8
possibly [1] - 3:9
post [1] - 19:1
post-GATT [1] - 19:1
posttrial [2] - 11:16, 12:1
practice [2] - 16:21, 17:16
pre [2] - 16:23, 19:1
pre-GATT [2] - 16:23, 19:1
preclude [1] - 11:17
predecessor [1] - 14:19
predicate [1] - 5:8
predict [1] - 18:21
prefer [2] - 4:17, 13:17
preference [1] - 20:14
preferring [1] - 18:3
prejudice [1] - 12:22
prematurely [1] - 11:17
prepare [1] - 20:24
prepared [2] - 13:14, 20:23
present [1] - 15:1
presentation [1] - 11:21
presented [3] - 8:2, 8:3, 8:6
pretrial [3] - 6:21, 19:22, 21:4
primary [1] - 17:18
problem [2] - 3:18, 16:17
problematic [1] - 18:20
procedure [1] - 15:2
procedures [3] - 16:3, 16:6, 16:21
processing [1] - 3:14
Procter [2] - 2:5, 2:19
product [1] - 10:11
prosecuting [1] - 15:9
prosecution [25] - 13:2, 13:8, 13:24, 14:12, 14:13, 14:17, 14:21, 14:24, 14:25,

15:12, 15:18, 15:23, 16:12, 16:23, 17:2, 17:4, 17:7, 17:8, 17:12, 17:17, 18:3, 18:5, 18:7, 18:11, 19:6
**prove** [1] - 9:4
**provide** [2] - 14:11, 15:15
**provided** [1] - 14:20
**proviso** [2] - 18:13, 18:15
**prudent** [2] - 11:10, 11:22
**purposes** [1] - 20:1
**put** [5] - 6:2, 6:4, 7:5, 17:16, 21:4

**Q**

**questions** [2] - 11:4, 20:23
**quote** [1] - 7:23

**R**

**raines** [1] - 4:11
**Raines** [8] - 4:20, 12:25, 14:14, 17:14, 18:4, 18:7, 18:23, 19:16
**raised** [4] - 4:11, 4:12, 4:13, 19:21
**rather** [3] - 11:23, 15:2, 15:14
**react** [1] - 17:25
**read** [1] - 15:18
**really** [6] - 6:9, 9:7, 15:16, 15:22, 16:7, 18:25
**realtime** [1] - 18:18
**reason** [1] - 17:18
**reasonable** [2] - 10:22, 11:1
**reasons** [3] - 13:8, 15:16, 17:10
**rebut** [1] - 21:11
**recently** [1] - 7:22
**record** [2] - 2:20, 11:18
**reference** [5] - 5:11, 5:12, 5:17, 6:22, 9:11
**referenced** [1] - 12:5
**referred** [1] - 15:18
**reflects** [1] - 19:24
**regard** [2] - 5:3, 19:16
**regarding** [1] - 13:2
**related** [4] - 5:6, 14:12, 14:16, 14:25

**relates** [1] - 4:25
**relating** [1] - 5:20
**relatively** [1] - 11:21
**relevance** [3] - 10:10, 10:12, 10:13
**relevant** [13] - 5:23, 7:14, 8:11, 8:13, 8:19, 8:21, 8:22, 9:3, 10:20, 15:23, 16:25, 17:6
**relied** [1] - 7:1
**relying** [3] - 5:12, 9:12, 9:25
**remaining** [1] - 5:2
**renew** [2] - 11:14, 11:25
**renewing** [1] - 12:23
**repetition** [1] - 20:17
**reply** [1] - 21:11
**report** [4] - 5:8, 8:7, 8:23, 17:16
**reports** [6] - 5:4, 5:24, 6:13, 7:9, 12:5, 12:9
**requested** [1] - 18:9
**required** [1] - 8:1
**resolved** [3] - 4:7, 4:8, 19:22
**respect** [2] - 10:19, 16:18
**respond** [4] - 5:21, 12:7, 14:9, 20:23
**response** [4] - 6:8, 8:8, 14:20, 15:15
**result** [1] - 4:5
**resume** [1] - 3:7
**risk** [1] - 11:16
**roar** [1] - 20:18
**rule** [2] - 15:13
**Rule** [1] - 5:19
**rules** [1] - 16:11
**ruling** [1] - 12:2
**run** [3] - 14:16, 15:3, 18:25
**running** [1] - 19:6
**runs** [1] - 15:11

**S**

**Sam** [1] - 2:19
**SAMUEL** [1] - 2:5
**SANDRA** [1] - 1:19
**Sandy** [1] - 2:13
**SANOFI** [1] - 1:4
**SANOFI-AVENTIS** [1] - 1:4
**satisfied** [1] - 9:15
**satisfy** [1] - 22:10
**sayings** [1] - 16:12
**schedule** [4] - 3:1, 4:1, 4:25, 21:24

**scheduling** [1] - 21:19
**science** [1] - 14:25
**scientific** [7] - 14:16, 14:20, 14:22, 15:3, 17:21, 18:4, 18:9
**scientifically** [1] - 14:17
**scientist** [2] - 13:6, 17:15
**se** [2] - 8:14, 9:1
**second** [1] - 15:22
**secondary** [12] - 5:6, 7:1, 7:6, 7:12, 7:17, 7:20, 8:10, 9:2, 9:9, 11:4, 21:12
**section** [1] - 6:22
**Section** [1] - 5:1
**see** [2] - 11:10, 18:5
**semester** [2] - 3:2, 3:4
**Senior** [1] - 1:14
**sense** [2] - 11:12, 13:11
**sent** [1] - 4:22
**set** [2] - 3:14, 18:12
**sets** [1] - 14:21
**Shaw** [2] - 2:2, 2:18
**SHERRY** [1] - 2:5
**Sherry** [1] - 2:19
**Shire** [2] - 14:18, 15:3
**SHIRE** [1] - 1:4
**show** [1] - 16:5
**side** [7] - 4:18, 13:5, 13:6, 13:21, 13:22, 21:23
**sides** [2] - 14:3, 14:9
**SLEET** [1] - 1:14
**somewhat** [1] - 19:7
**sorry** [1] - 10:25
**sort** [3] - 5:8, 12:8, 15:24
**sounds** [1] - 3:18
**speaking** [1] - 2:21
**speaks** [1] - 16:25
**spend** [2] - 19:10, 19:11
**spending** [1] - 20:3
**spent** [1] - 15:8
**stand** [2] - 19:10, 19:13
**Stark** [1] - 7:23
**start** [1] - 17:24
**statement** [2] - 10:22, 11:1
**statements** [1] - 20:14
**STATES** [1] - 1:1
**still** [1] - 3:22
**straight** [2] - 9:17, 10:2
**strict** [1] - 16:8

**strikes** [1] - 15:5
**STULL** [1] - 2:4
**Stull** [1] - 2:19
**subject** [1] - 14:15
**submit** [2] - 19:24, 20:3
**submitted** [1] - 5:4
**substantive** [2] - 15:15, 21:10
**success** [11] - 5:9, 6:3, 6:15, 7:2, 7:13, 9:14, 9:25, 10:10, 10:13, 11:7, 12:17
**sufficient** [2] - 19:25, 20:2
**suggested** [1] - 3:20
**suggesting** [1] - 22:2
**suit** [1] - 12:15
**sun** [1] - 21:14
**surprised** [1] - 21:7
**surprising** [1] - 9:22
**Symbol** [2] - 16:1, 16:12

**T**

**Tab** [1] - 6:20
**tailor** [1] - 19:13
**talks** [2] - 5:7, 18:9
**taught** [1] - 3:3
**teach** [2] - 3:2, 3:5
**technical** [1] - 15:11
**Technologies** [1] - 16:12
**technologies** [1] - 16:1
**Telephone** [1] - 1:12
**tend** [1] - 19:9
**term** [1] - 12:11
**terms** [1] - 12:10
**testified** [1] - 11:15
**testify** [4] - 13:8, 15:17, 21:20
**testifying** [2] - 5:25, 21:18
**testimony** [5] - 12:1, 12:20, 14:15, 14:23, 19:13
**Teva** [1] - 7:16
**THE** [39] - 1:1, 1:2, 2:9, 2:15, 2:20, 3:23, 4:2, 4:18, 5:13, 6:6, 6:8, 8:8, 9:5, 10:4, 10:22, 11:9, 12:6, 12:21, 12:25, 13:16, 14:5, 15:5, 16:16, 17:24, 18:13, 18:18, 18:22, 19:9, 19:16, 19:19, 20:2, 20:7, 20:11, 20:15, 21:13,

21:16, 21:25, 22:9, 22:12
**THERAPIES** [1] - 1:4
**thinking** [1] - 3:13
**three** [2] - 4:10, 20:10
**Thursday** [3] - 3:5, 3:6, 21:21
**timing** [1] - 15:13
**today** [5] - 2:18, 2:24, 11:19, 12:3, 14:3
**token** [1] - 6:2
**ton** [1] - 2:24
**took** [1] - 10:18
**tough** [1] - 21:14
**travel** [1] - 3:10
**trial** [11] - 3:19, 4:1, 4:16, 6:1, 11:10, 11:14, 13:12, 14:3, 15:19, 15:20, 17:23
**trick** [1] - 7:3
**try** [2] - 9:4, 21:23
**trying** [1] - 4:23
**Tuesday** [2] - 1:11, 21:20
**Tunnell** [1] - 1:18
**turn** [2] - 22:1, 22:7
**two** [10] - 5:2, 10:12, 10:19, 11:15, 13:5, 14:7, 14:9, 14:10, 15:16, 20:9
**type** [22] - 5:3, 5:10, 5:11, 5:16, 5:20, 6:1, 6:14, 6:19, 6:22, 7:7, 7:11, 7:14, 7:18, 7:25, 8:5, 8:11, 10:17, 11:2, 12:4, 12:10, 13:19, 18:8
**typically** [1] - 13:18

**U**

**U.S.D.C** [1] - 1:14
**UCB** [1] - 7:22
**ultimately** [1] - 10:11
**under** [4] - 5:19, 10:2, 10:23, 21:14
**understood** [1] - 21:15
**unenforceability** [1] - 21:6
**unenforceable** [1] - 13:23
**unheard** [1] - 20:21
**UNITED** [1] - 1:1
**unless** [2] - 20:2, 22:12
**up** [5] - 4:15, 9:4, 16:5, 18:12, 22:4
**USA** [1] - 1:8
**utilities** [1] - 16:24

## V

**variant** [3] - 6:24, 9:10, 10:1
**versus** [1] - 19:1
**vet** [1] - 8:25
**view** [3] - 3:23, 17:13, 18:19

## W

**wait** [1] - 13:16
**walk** [1] - 17:17
**Washington** [1] - 2:6
**ways** [1] - 14:9
**Wednesday** [1] - 21:20
**week** [2] - 4:1, 22:13
**weeks** [1] - 9:18
**whichever** [1] - 4:16
**WIESEN** [8] - 2:3, 14:6, 15:7, 18:2, 18:23, 19:18, 21:2, 21:15
**Wiesen** [8] - 2:19, 4:20, 17:19, 17:25, 18:22, 19:17, 20:7, 21:14
**WILLIAM** [1] - 2:4
**willing** [1] - 13:16
**Wilmington** [1] - 1:11
**witness** [12] - 4:16, 5:13, 13:1, 18:19, 19:5, 19:8, 19:10, 19:12, 21:9, 21:17, 22:1, 22:7
**witnesses** [6] - 11:15, 11:17, 13:13, 13:19, 13:21, 21:11
**word** [1] - 10:4
**words** [2] - 12:8, 18:5
**world** [2] - 10:6, 10:14

## Y

**years** [3] - 15:25, 17:6, 21:13
**yesterday** [3] - 4:25, 7:4, 9:12
**York** [2] - 1:21, 2:14